IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARL JAVAN ROSS, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JKB-20-1031 |
| WARDEN WALTER WEST and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * *** | |

## MEMORANDUM OPINION

Self-represented Petitioner Carl Javan Ross filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he collaterally attacks his 2016 convictions for sexual abuse of a minor, second-degree sexual offense, third-degree sexual offense, fourth-degree sexual offense, and second-degree assault. ECF 1. Respondents contend that the claims in the petition are procedurally defaulted or lack merit. ECF 10. The petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the petition and declines to issue a certificate of appealability.

### I. BACKGROUND

#### A. Trial

Ross was charged with sexual offenses against a minor in a nine-count indictment on August 17, 2015, in the Circuit Court for Baltimore County. ECF 11-1 at 26. After electing a bench trial on September 20, 2016, Ross was tried and convicted of sexual abuse of a minor, second-degree sexual offense, third-degree sexual offense, fourth-degree sexual offense, and

second-degree assault.[1] ECF 11-2; *Id.* at 95. On February 16, 2017, Ross was sentenced to concurrent sentences of twenty years' imprisonment with ten years suspended. ECF 11-3.

The testimony at trial established that in May of 2014 Ross was living with his girlfriend, Rachel Miles, and her two daughters, eleven-year-old M.S. and ten-year-old E.R. *Id.* at 50–51. Ross and Miles slept in the attic upstairs. The girls shared a bedroom, but spent time in the "rec room," which had a large television, a sofa bed, and a recliner chair. *Id.* at 52–56. E.R. testified that one evening in May of 2014, she was laying on the sofa bed in the rec room watching a movie and M.S. was asleep in the recliner chair. *Id.* at 26. E.R. testified that she witnessed Ross come downstairs and place his erect penis on M.S.'s mouth. *Id.* at 26, 30-31. M.S. was asleep and did not witness the event. *Id.* at 16. E.R. told her mother what happened that same night. *Id.* at 31. Miles spoke to E.R. and Ross about the incident but did not ask Ross to leave the house. *Id.* at 40. E.R. denied she had any sexual contact with Ross. She also denied that her sister claimed to ever have had any sexual contact with Ross. *Id.* at 36.

Detective Josh Rees of the Baltimore City Police Department responded to a report of the incident over a year later, in July of 2015. *Id.* at 68. Rees read Ross his *Miranda* rights and then questioned him. *Id.* Ross provided two different accounts of the event during two separate interviews. During the first interview, Ross stated that he went downstairs to use the bathroom, and while he was walking across the room his shorts accidentally dropped, and his penis was

---

[1] The prosecution dropped Counts 1-3 of the indictment, possession of child pornography and possession with the intent to distribute child pornography, after Ross was indicted in federal court on similar charges. ECF 11-1 at 20; ECF 11-4 at 50. *See United States v. Ross*, Criminal Action No. 16-cr-20-JKB (Ross convicted of receipt of child pornography and possession of child pornography and sentenced to 25 years imprisonment after trial by jury). The prosecution dropped Count 6, attempted second degree sexual offense, after resting its case at trial. ECF 11-2 at 73.

2

exposed to the girls. *Id.* at 69. During the second interview, Ross stated that he was downstairs because the girls' grandmother asked him to take them to bed. *Id.* at 72.

The trial judge found that E.R.'s demeanor while testifying was credible, pointing out that she did not embellish the story or create unnecessary details. He concluded that Ross's story that his pants accidentally dropped lacked credibility considering E.R.'s testimony that she saw an erect penis. The trial judge also found that Ross lacked credibility because he changed the details over the course of his police interviews. The trial judge entered a guilty verdict on all counts. *Id.* at 92–94.

**B. Direct Appeal**

Ross noted a direct appeal with the Appellate Court of Maryland,[2] asserting a single error that the evidence was insufficient to support his conviction. ECF 11-1 at 12, 44–55. The court issued an opinion on December 11, 2017, affirming Ross's convictions and sentence. *Id.* at 80–82; *Ross v. State*, No. 99, Sept. Term, 2017, 2017 WL 6281931 (Md. Ct. Spec. App. Dec. 11, 2017). Ross filed a *pro se* petition for a writ of certiorari with the United States Supreme Court, which was denied on October 29, 2018. ECF 11-1 at 87–98; *Ross v. Maryland*, 139 S.Ct. 416 (2018).

**C. Post-Conviction**

Ross filed a *pro se* petition for post-conviction relief on April 12, 2019, in the Circuit Court for Baltimore County. ECF 11-1 at 103–05. Ross amended his petition once, *pro se*, before his

---

[2] At the time Ross's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland and the Court of Special Appeals to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

3

appointed counsel filed a supplemental petition on September 12, 2019. *Id.* at 110–13; 129–32. The circuit court held a hearing on September 23, 2019. ECF 11-4. During the hearing, Ross dismissed all claims except those included in the counseled supplemental petition. *Id.* at 7–8; 12–13. Ross and his trial counsel, Jennifer Aist, testified at the hearing. *Id.* The circuit court issued an opinion on October 29, 2019, denying Ross's petition. ECF 11-1 at 144–65.

### D. Procedural History

Ross filed his first federal petition for habeas corpus relief in this Court on December 14, 2018. *See Ross v. Foxwell*, Civil Action No. JKB-18-3881 (D. Md. 2019) ("*Ross I*"). The petition in *Ross I* challenged the same 2016 convictions challenged in the instant petition and alleged: (1) violation of his speedy trial rights, (2) insufficient evidence to support the convictions, (3) the trial judge employed an incorrect standard of proof, and (4) prosecutorial misconduct. (ECF 1 at 5 in *Ross I*). Because the petition contained both an exhausted claim (insufficient evidence) along with unexhausted claims, the Court issued an order on April 22, 2019, dismissing the petition without prejudice. (ECF 11 in *Ross I*).

Ross filed a second federal petition for habeas corpus relief on November 14, 2019. *See Ross v. Warden*, Civil Action No. JKB-19-3338 (D. Md. 2019) ("*Ross II*"). Like *Ross I*, *Ross II* also challenged the 2016 convictions and included an exhausted claim (insufficient evidence) and unexhausted claims: (1) violation of speedy trial rights, (2) violation of the right to a public trial, (3) prosecutorial and judicial misconduct, (4) racially discriminatory prosecution, and (5) insufficient evidence to support the convictions. (ECF 3 in *Ross II*). On March 25, 2020, the Court dismissed the petition without prejudice for the same reasons articulated in *Ross I*. (ECF 11 in *Ross II*).

4

Ross filed the current petition on March 31, 2020. ECF 1 ("*Ross III*"). The petition lists four claims and incorporates the claims from *Ross I* and *Ross II*. The total pending claims include: (1) insufficient evidence to support the convictions, (2) violation of speedy trial rights, (3) ineffective assistance of counsel for failure to adequately cross examine witnesses, (4) ineffective assistance of trial counsel for failure to assert speedy trial rights, (5) the trial court paid his counsel to suppress proof of his innocence, (6) the trial court utilized the incorrect standard of proof, (7) prosecutorial misconduct, (8) denial of right to public trial, and (9) racially discriminatory prosecution. Respondents contend that Grounds Two, Five, Six, Seven, and Nine are unexhausted and procedurally defaulted. Respondents contend Ground Eight is procedurally defaulted pursuant to the independent and adequate state ground doctrine.

## II. PROCEDURAL DEFAULT

The Court will first address the claims that are procedurally defaulted. Procedural default occurs when the petitioner failed to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent

5

and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman*, 501 U.S. at 731–32).

To overcome a procedural default, the petitioner must demonstrate cause and prejudice, or show that a failure to review the claim will result in a fundamental miscarriage of justice. *Gray*, 806 F.3d at 798. Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error; and (2) actual prejudice from the alleged error. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (2004). A claim may still be reached if the petitioner can show that failure to consider the claim on the merits would result in a miscarriage of justice, that is, conviction of one who is actually innocent.[5] *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

The record reflects that Ross did not raise Grounds Two, Five, Six, and Seven in either his direct appeal or post-conviction proceedings. For a person convicted of a criminal offense in

---

[5] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Ross has not invoked actual innocence as an excuse for his procedural default nor does the Court find that any of Ross's filings support the stringent standard for a gateway claim of actual innocence.

Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103. After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202).

Relevant here, a procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit Ross to file a second and successive state petition for post-conviction relief. *See* Md. Code Ann., Crim. Proc. § 7-103(a). Grounds Two, Five, Six, and Seven are therefore procedurally defaulted.

Respondents also argue that Ground Nine is procedurally defaulted because Ross failed to raise it during state court proceedings, or alternatively, the Court should presume the circuit court rejected the claim on the merits even though it was not addressed in the written order dismissing Ross's petition. ECF 10 at 42; 44–46. As noted above, at the beginning of his post-conviction hearing, Ross dismissed all claims but those included in his supplemental post-conviction petition.

7

ECF 11-4 at 7–8; 12–13. During Ross's testimony at the post-conviction hearing, the circuit court judge asked Ross whether he would like to tell the court anything else. *Id.* at 37. Ross advised the circuit court judge that he believed that he was treated differently during his trial because of his race. *Id.* at 38–40. Ross told the circuit court judge that his trial counsel said he should cut his dreadlocks because most of the jury would be white. *Id.* The circuit court judge pointed out that Ross waived his right to a jury trial during the hearing. The judge also commented, "[s]o, I'm going to put it on my list, you think you were treated differently because you are African American?" *Id.* at 40.

Although the circuit judge indicated during the hearing that she was putting Ross's complaint about racial discrimination "on [her] list," the circuit court's October 29, 2019, opinion dismissing Ross's post-conviction petition did not address Ross's allegation of a racially discriminatory trial. The Court need not address the question of whether Ground Nine is exhausted under the circumstances, because Ground Nine is plainly meritless. 28 U.S.C. § 2254(b)(2) permits a federal court, in its discretion, to deny a habeas corpus claim on the merits despite the applicant's failure to exhaust available remedies in state court. *See Swisher v. True*, 325 F.3d 225, 232–33 (4th Cir.), *cert. denied*, 539 U.S. 971 (2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted").

Ross argues that his case was referred for federal prosecution, his trial was delayed, and he received a stricter sentence because he is African American. ECF 15 at 4. Ross supports his claim by listing the names of white sex offenders he claims were treated more favorably. *Id.* Construed liberally, Ground Nine alleges the persons involved in the prosecution of Ross violated his equal protection rights. An equal protection claim requires, as a threshold matter, that the petitioner

8

demonstrate that a governmental decision-maker has treated him differently from others similarly situated and that such unequal treatment was the result of intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Ross's list of white sex offenders is anecdotal, does not show he is "similarly situated," and does not demonstrate purposeful discrimination by anyone involved in his trial. Ross's speculation of racial discrimination falls very short of clear evidence of racial discrimination.

Respondents argue that Ground Eight is procedurally defaulted because Ross failed to present it on direct appeal. Indeed, the circuit court found that Ross waived Ground Eight because he failed to raise it on direct appeal when dismissing his post-conviction petition. ECF 11-1 at 163. Because the circuit court clearly and expressly relied on a state ground as the basis of dismissal, Ground Eight is procedurally defaulted, even though the circuit court alternatively found the claim lacked merit. *See Harris v. Reed*, 489 U.S. 255, 264 n.10, (1989); *see also Skipper v. French*, 130 F.3d 603, 609 (4th Cir.1997) ("A decision which bases dismissal both on the merits and on independent and adequate state law ground forecloses federal habeas review."); *Ashe v. Styles*, 39 F.3d at 80, 86 (4th Cir. 1994) (Where a state court "both addresses the merits of the federal question but also invokes a state procedural bar that is adequate and independent of federal law as an independent ground for decision, a federal court must accord respect to the state ground for decision . . . .").

Ross argues that his default should be excused because direct appeal and post-conviction counsel were ineffective by failing to assert the defaulted claims. ECF 15 at 3–4. Constitutionally ineffective assistance of counsel occurs in proceedings in which a criminal

defendant has the constitutional right to counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). Ross had a constitutional right to counsel during his appeal to the Appellate Court of Maryland. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). However, Ross's alleged ineffective assistance of appellate counsel cannot serve as "cause" to excuse his procedural default because he failed to raise ineffective assistance of appellate counsel as an independent claim with the Maryland state courts. *See Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) (explaining that the exhaustion doctrine generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default). In some circumstances, ineffective assistance of post-conviction counsel may serve as "cause" to excuse procedural default, but none of Ross's procedurally defaulted claims are based on ineffective assistance of counsel. *See Martinez v. Ryan*, 566 U.S. 1 (2012) (when post-conviction counsel errs in failing to raise ineffectiveness of trial counsel as a ground for relief at the initial stage of collateral proceedings, this error may provide grounds to excuse procedural default of the ineffectiveness claim).

Ross has provided no excuse for the procedural default. Grounds Two, Five, Six, Seven, and Eight are not properly before the Court and are dismissed. Ground Nine, regardless of procedural default, is dismissed because it is plainly meritless.

## III.  STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419–20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might

11

disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## IV. ANALYSIS

### A. Ground One-Insufficient Evidence to Support Conviction

In Ground One, Ross contends that the evidence at trial was insufficient to support his conviction. Specifically, Ross argues that there was no physical evidence a crime was committed, the only witness to the alleged crime was biased against him, and his anatomy is inconsistent with the description provided by E.R. ECF 1 at 5. Ross raised this claim on direct appeal. The Appellate Court of Maryland concluded:

> Ross's claims are essentially an invitation for this Court to reweigh the evidence, which we will not do. It is "not a proper sufficiency argument to maintain that the [fact-finder] should have placed less weight on the testimony of certain witnesses or should have disbelieved certain witnesses . . . . Viewed in a light most favorable to the State, the evidence demonstrated that the victim's ten-year-old sister observed Ross place his penis on the eleven-year-old victim's mouth while she

12

> slept. That evidence, if believed, was legally sufficient to support a finding of each element of each crime charged, beyond a reasonable doubt.

ECF 11-1 at 80–82; *Ross v. State*, No. 99, Sept. Term. 2017, 2017 WL 6281931, at *1 (Md. Ct. Spec. App. Dec. 11, 2017).

Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992); *see also Evans-Smith v. Taylor*, 19 F.3d 899, 905 (4th Cir. 1994) ("The standard is obviously rigorous."). Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the trier of fact's guilt determination or to replace the state's system of direct appellate review. *Wright*, 505 U.S. at 292. Thus, a petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996). The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Ross was found guilty of sexual abuse of a minor (Count 4), second-degree sexual offense (Count 5), third-degree sexual offense (Count 7), fourth-degree sexual offense (Count 8), and second-degree assault (Count 9). To prove the elements of these offenses, the state was required to show Ross was a household member who caused the sexual abuse of a minor, Md. Code Ann., Crim. Law § 3-602, engaged in a sexual act with someone under the age of 14 years, Md. Code Ann., Crim. Law §§ 3-306-308, and engaged in offensive physical contact with another person, *Nicolas v. State*, 426 Md. 385, 403 (2012). As noted by the Appellate Court of Maryland, E.R.'s testimony established each element of the offenses charged. The Court cannot say that no rational fact finder would have found Ross not guilty based on the evidence presented at trial. Thus, the Appellate Court of Maryland's conclusion that the evidence was sufficient to support the

13

convictions is neither contrary to nor an unreasonable application of federal law.

## B. Grounds Three and Four- Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

14

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### 1. Failure to Adequately Cross Examine Witnesses

Ross contends that his trial counsel was ineffective because she failed to adequately cross

15

examine E.R, Rachel Miles, and Detective Rees. ECF 11-1 at 129-31; ECF 11-4 at 17–31.[6] The circuit court thoroughly examined the trial transcript and determined that trial counsel competently elicited testimony favorable to Ross from these witnesses. On cross-examination, E.R. admitted that the police were not informed about the incident for over a year, E.R. lied to her mother on previous occasions, E.R.'s mother continued to allow Ross to live in the home (suggesting Miles did not believe E.R.'s account), Ross never engaged in sexual contact with E.R., and E.R. had a potential motive for lying about the incident because Ross had made negative comments about her father. Trial counsel was also able to establish that E.R.'s statement to the police about seeing "white stuff" come out of Ross's penis was inconsistent with what she said Ross did on the night of the incident. ECF 11-1 at 154–55. Ross argued that his counsel should have questioned E.R. about a pornography DVD allegedly found in the home. However, the circuit court found that the parties stipulated that no evidence of pornography would be mentioned at trial and, if Ross's trial counsel had mentioned the DVD, it would have opened the door for questions related to Ross's pending federal charges for distribution of child pornography. *Id.* at 155–56.

The circuit court determined that Ross's trial counsel successfully elicited testimony from Miles that Ross was wearing shorts on the night of the incident and not the pants described by E.R., Miles questioned what happened the night of the incident, and Miles chose not to end her relationship with Ross based on E.R.'s allegations against Ross the night of the incident. Miles also testified on cross-examination that she told the police that she was having trouble with E.R. lying to her. Miles admitted that her daughter's lying caused her to question whether the incident occurred. *Id.* at 157–58. The circuit court concluded that Ross's trial counsel effectively cross-

---

[6] Ross generally alleges in his federal habeas petition that his counsel was "incompetent." ECF 1 at 5. Respondents have construed this allegation to include the specifics of his post-conviction ineffective assistance of counsel claims. ECF 10 at 31.

16

examined Miles. The circuit court further concluded that Ross's claim that his counsel should have questioned Miles that E.R. bragged about getting away with lying would not have admissible through Miles' testimony. *Id.* at 158.

Ross argued that his trial counsel should have pressed Detective Rees' on cross-examination that the police did not locate a semen stain on the floor. *Id.* at 130–31. The record reflects that Ross's trial counsel chose not to question Detective Rees. The circuit court determined that trial counsel was not ineffective in failing to question Detective Rees about the semen stain because of the amount of time that had passed from the incident and the date it was reported to the police. *Id.* at 159–60.

The Court's independent review of the trial transcript does not reveal that Ross's trial counsel's performance fell below an objective standard of reasonableness. The scope of cross-examination is a paradigm of the type of tactical decision that ordinarily cannot be challenged as evidence of ineffective assistance of counsel. *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir. 1983). Considering the deference owed, both to trial counsel's tactical decisions and to the circuit court's conclusions, Ross's claim that his counsel was ineffective for inadequate cross-examination of state witnesses is without merit.

### 2. Failure to Adequately Assert Speedy Trial Rights

Ross argues that his trial counsel was ineffective because she failed to advocate for his speedy trial rights. ECF 1 at 5. Ross complains that it took his case fourteen months to go to trial because of excessive, inexcusable postponements to which his counsel failed to object. ECF 15 at 4; ECF 11-1 at 129. The circuit court reviewed the record, finding the trial date was postponed four times, each for good cause. *Id.* at 151–52. The trial date was originally scheduled for December 14, 2015, but the state requested a postponement because the assistant state's attorney

was ill. The trial date was rescheduled for February 11, 2016, but did not occur on that date because defense counsel was on Family Medical Leave. A few days prior to the rescheduled date of May 3, 2016, the state asked for a new date because Ross was indicted on federal charges. The circuit court reset the trial for June 29, 2016. On June 29, 2016, the parties entered a joint postponement for the ultimate trial date of September 20, 2016. The circuit court concluded that Ross's counsel was not ineffective because there was good cause for each postponement. *Id.*

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." Despite the breadth of the amendment's language, some delay of trial is constitutionally permissible. *See Doggett v. U.S.* 505 U.S. 647, 651 (1992). In order to determine if Petitioner's Sixth Amendment right to a speedy trial was violated, four factors must be considered. The four factors to be considered are the length of the delay, the reason for the delay, the timeliness of the assertion of the right, and the actual prejudice suffered as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 532 (1972). In *Barker*, the Court cautioned,

> We regard none of the four factors identified above (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 533 (footnote omitted).

After balancing the four factors, the Court agrees with circuit court that Ross cannot establish his counsel was ineffective for failing to assert his speedy trial rights. The delay from charge to trial was just over one year, and barely over the minimum time period when a speedy trial analysis is even necessary. *See Doggett v. U.S.*, 505 U.S. 647, 652 n.1 (1992)

(recognizing generally-established one-year threshold). While Ross contends that his counsel should have objected to the continuances, only two are attributable to the state for a total of a four-month delay. The four-month delay attributable to the state was due to attorney illness and additional federal charges against Ross. Finally, Ross has not shown that the delay resulted in any impairment in his preparation for trial. No speedy trial violation occurred under the Sixth Amendment to the Constitution, and therefore Ross cannot demonstrate prejudice from his counsel's failure to adequately assert this right. Ross's ineffective assistance of counsel claim for failure to assert his speedy trial rights is consequently without merit.

## V.   *CERTIFICATE OF APPEALABILITY*

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id.* at 338. When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Ross's claims have been dismissed on both substantive and procedural grounds. Upon review of the record, this Court finds that Ross has not made the requisite showing, and the Court

therefore declines to issue a Certificate of Appealability. Ross may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

Dated this 22 day of March, 2023

FOR THE COURT:

James K. Bredar
Chief Judge